UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SILVANO GALLEGOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. |
| v. ) | |
| ) | **JURY DEMAND** |
| ) | |
| TOTAL STAFFING SOLUTIONS, INC. ) | |
| ) | |
| Defendant, ) | |
| ) | |

## COMPLAINT

Silvano Gallegos (hereinafter "Plaintiff"), by and through his attorney, Mario E. Utreras, Utreras Law Offices Inc., asserts the following against Total Staffing Solutions, Inc. ("Defendant"), as the basis for his Complaint at Law:

### Parties, Jurisdiction, And Venue

1. Plaintiff is a resident of Chicago, Cook County, Illinois

2. Defendant is incorporated in the state of Illinois, and its principle place of business is in Naperville, Illinois.

3. Plaintiff filed charges of disability discrimination and retaliation with the Illinois Department of Human Rights ("IDHR"), on May 31, 2017, which were immediately cross filed with the Equal Employment Opportunity Commission ("EEOC"), case no. 21B-2017-01479.

4. IDHR issued a finding of lack of substantial evidence on March 8, 2018. EEOC adopted their findings, and issued Plaintiff a Notice of Right to Sue signed and dated October 1, 2018. A copy of the EEOC Notice of Right to Sue is attached to this Complaint as "Exhibit A."

5. Plaintiff bring this cause of action against Defendant for disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA").

6. Plaintiff brings supplemental state law claims arising for the same nucleus of operative facts against Defendant for unlawful termination in violation of Illinois public policy for exercising rights protected under the Illinois Workers Compensation Act.

7. This Court has original jurisdiction to hear the ADA claims under 28 U.S.C. §§ 1331

8. This Court has supplemental jurisdiction to hear the state law claim pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS

10. Plaintiff was employed by Defendant out of its Bridgeport location.

11. Defendant was a staffing agency that would assign Plaintiff to multiple job sites for different clients.

12. Plaintiff began working for Defendant in approximately December of 2012, as a welder.

13. In addition, Plaintiff sometimes worked for Defendant's client, Fajas Food, as a Food Packer.

14. For welding work, Plaintiff was paid $14 per hour by Defendant, and for food packing, he was paid $10.50 per hour by Defendant.

15. Plaintiff worked 40 per hours per week for Defendant.

16. On April 12, 2017, Plaintiff incurred knee and back injuries while working for Defendant at Fajas Food, when he slipped on the floor while putting meat onto a shredder.

17. The supervisor of Fresa Foods, Teresa (last name unknown) went to help Plaintiff when he slipped.

18. Teresa called Julio (last name unknown), who worked for Defendant assigning jobs to temps out of Defendant's Bridgeport office, to inform him about Plaintiff's injury.

19. Plaintiff went to see Julio before going to a physician, and he was told by Julio to sign some papers that were in English. Plaintiff did not speak or read English, but fearing for his job, he signed the papers. Plaintiff asked Julio when he could return to work, and Julio said he could not return, because he had hurt himself.

20. On April 12, 2017, Plaintiff went to Defendant's doctor, Physicians Immediate Care, and he was diagnosed with a sprain of his left knee, and strains of his fascia and tendons of his lower back.

21. The doctor at Physicians Immediate Care told Plaintiff that he could, continue to work, with the reasonable accommodation of sitting for 5 minutes of every hour.

22. Plaintiff returned to work with his discharge papers from Physicians Immediate Care and spoke with Luis (last name unknown) at Defendant's Bridgeport office, and was told by Luis that he could not return to work at Defendant, and to go to the doctor again.

23. On April 17, 2017, after visiting the doctor yet again, Plaintiff once again met with Luis and showed him discharge documents that contained work restrictions.

24. The restrictions were that Plaintiff continue sitting for 5 minutes of every hour at work, and then return on April 20, 2017 for another check up with Physicians Immediate Care.

25. After seeing the restrictions, Defendant terminated Plaintiff.

26. Plaintiff's back and knee conditions, constitute serious physical impairments that substantially limit major life activities, including bending down and standing, and therefore qualify as disabilities under the Americans with Disabilities Act ("ADA")

27. Luis stated that he was terminating Plaintiff for not having a valid social security number.

28. Such a reason was pretext, as Defendant presumably checked names and the validity of their social security numbers when it first hires employees.

29. In addition, or in the alternative, Defendant knowingly hires undocumented immigrants including Plaintiff, and turns a blind eye to their true documented status, in order to operate its business at a profit.

### COUNT I
### FAILURE TO ACCOMMODATE
### IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA")

30. Plaintiff incorporates paragraphs 1-29 above into Count I as though fully set forth herein.

31. Plaintiff has a qualifying disability consisting of a physical impairment, back and left knee disorder that substantially impacts his ability to bend and stand, within the meaning of the ADA.

32. Plaintiff was a qualified individual able to perform the essential functions of his position with a reasonable accommodation.

33. Defendant failed to engage in the interactive process with Plaintiff to attempt to define the limits of his disability, in terms of its nature, severity, duration, or the types of accommodations that would be most effective.

34. Defendant could have reasonably accommodated Plaintiff by allowing him to sit for five minutes every hour while working.

35. Defendant would not have experienced undue hardship in providing Plaintiff with a reasonable accommodation.

36. Defendant had notice of Plaintiff's disability through its supervisor Luis (last name unknown).

37. Defendant refused to accommodate Plaintiff.

38. Defendant terminated Plaintiff on April 17, 2017.

39. As a result of Defendant's failure to accommodate him, Plaintiff experienced adverse employment actions in the form of lost pay and benefits, termination, and emotional distress damages.

**WHEREFORE**, Plaintiff seeks judgment in its favor, and against Defendant, on Count I, and seeks

a) back pay;

b) compensatory damages;

c) punitive damages;

d) attorneys fees' and costs.

## COUNT II
## RETALIATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT ("ADA")

40. Plaintiff incorporates paragraphs 1-39 above into Count II as though fully set forth herein.

41. Plaintiff has a qualifying disability consisting of a physical impairment, back and left knee disorder that substantially impacts his ability to bend and stand, within the meaning of the ADA.

42. Plaintiff was a qualified individual able to perform the essential functions of his position with a reasonable accommodation.

43. Defendant failed to engage in the interactive process with Plaintiff to attempt to define the limits of his disability, in terms of its nature, severity, duration, or the types of accommodations that would be most effective.

44. Defendant would not have experienced undue hardship in providing Plaintiff with a reasonable accommodation.

45. Defendant had notice of Plaintiff's disability through its supervisor Luis (last name unknown).

46. Defendant refused to accommodate Plaintiff.

47. Plaintiff requested reasonable accommodations two or three times from Defendant, but was refused.

48. On his last request, Plaintiff was again refused, and immediately terminated, on account of supposedly having an invalid social security number.

49. Defendant violated the ADA by terminating Plaintiff for repeatedly asking for reasonable work accommodation, which Defendant refused to provide. Plaintiff was immediately fired by Defendant after making his last request

50. A temporal connection exists between Plaintiff's requests for accommodations and Defendant's firing of him.

WHEREFORE, Plaintiff seeks judgment in its favor, and against Defendant, on Count II, and seeks

a) back pay;

b) compensatory damages;

c) punitive damages;

d) attorney fees' and costs.

### COUNT III
### UNLAWFUL TERMINATION IN VIOLATION OF PUBLIC POLICY FOR EXERCISING RIGHTS PROTECTED UNDER THE IWCA

51. Plaintiff incorporates paragraphs 1-50 above into Count III as though fully set forth herein.

6

52. Plaintiff suffered physical injuries while employed by Defendant on April 12, 2017, while working for Defendant's client, Fresa Foods.

53. Plaintiff saw Defendant's physicians for such injuries, on April 12 and 17, 2017.

54. Defendant was aware that Plaintiff had experienced work injuries while in their employment, as it directed Plaintiff to its physicians twice, post injury, on April 12 and 17, 2017.

55. Defendant knew or had reason to know that Plaintiff intended to exercise rights protected by the Illinois Workers Compensation Act, ("IWCA") 820 ILCS 305 *et seq*.

56. Plaintiff engaged in a protected activity, and exercised his rights protected under the IWCA, when he sought treatment for his injuries, at Defendant's expense, for work related injuries, at Physicians Immediate Care, Defendant's physicians.

57. Defendant took an adverse employment action, when it terminated Plaintiff for exercising his rights under the IWCA, on April 17, 2017.

58. Defendant's stated reason for terminating him, a lack of a valid social security number, was a pretext for discrimination. Defendant could easily research online the validity of Plaintiff's or any employees' social security number prior to hiring them

59. In addition, or in the alternative, Defendant knowingly hired undocumented immigrants including Plaintiff, and turned a blind eye to their true documented status, in order to operate its business at a profit.

60. But for Plaintiff engaging in his rights protected under the IWCA Plaintiff would not have been fired.

61. WHEREFORE, Plaintiff seeks judgment in its favor, and against Defendant, on Count III, and seeks

   a) back pay;

b) compensatory damages;

c) punitive damages;

d) costs.

## JURY DEMAND

Plaintiff requests a Jury trial for all Counts.

Respectfully submitted,

Silvano Gallegos

By: /s/ Mario E. Utreras
   Plaintiff's Attorney

UTRERAS LAW OFFICES, INC.
333 N. Michigan, Suite 1815
Chicago, Illinois 60601
312-263-5580 / 888-263-6148 fax
mutreras@utreraslaw.com
Atty No. 6230426